Louis Liberty (SBN 147975)
LIBERTY & ASSOCIATES, PC
1032 Flying Fish Street
Foster City, CA 94404
Tel: (650) 341-0300
Email: lou@libertyenvirolaw.com

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

STEVEN NEMEC,

               Plaintiff,

     vs.

ENVIRONMENTAL RESOURCE
RECOVERY, INC.;
MICHAEL G. SALINAS; JEFF HERMLE;
SALVADOR ORTEGA; ALFONSO
VALENCIA; DOUG SOLINSKY;
FAIRFIELD RESIDENTIAL;
FRH MANAGEMENT, LLC,

               Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 5:21-CV-**10095**

VERIFIED COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF for:

1. Sexual Harassment/Hostile Work
   Environment;
2. Wrongful Termination;
3. Conspiracy
4. Federal EPCRA;
5. Federal Clean Water Act;
6. Federal RCRA

JURY TRIAL DEMANDED [FRCivP R.38(b)]

Plaintiff Steven Nemec hereby alleges in this VERIFIED COMPLAINT:

**PARTIES**

Plaintiff Steven Nemec is an individual, who resides and works within the County of Santa Clara. Plaintiff uses, enjoys, and benefits from the waters into which Defendants unlawfully discharge stormwater pollution, including the receiving waters. The quality of the receiving waters directly affects the health, recreational, aesthetic, scientific and environmental interests of Plaintiff, Plaintiff's family and his fellow community members. The interests of Plaintiff have been, are being, and will be adversely affected by Defendants' discharges of stormwater pollution into the receiving waters in violation of the specific requirements of the National Pollution Discharge Elimination System ("NPDES").

Defendant ENVIRONMENTAL RESOURCE RECOVERY, INC ("ERR") is a business organization, doing business in the State of California that was purportedly formed November 17, 1994, originally as a California Stock Corporation and assigned Secretary of State file number C1895700. The current status and/or standing with the California Secretary of State and/or Franchise Tax Board is unknown at this time. ERR has its principal office located at 1615 South 7th Street, City of San Jose, County of Santa Clara, California ("ERR 1615" or "ERR Old Yard"). ERR also operates a facility next door at 1611 South 7th Street, San Jose, County of Santa Clara, California ("ERR 1611" or "ERR New Yard"). ERR additionally has satellite facilities located at 689 Quinn Avenue, San Jose, County of Santa Clara, California and at 462 Southpoint Circle, Brownsburg, County of Hendricks, Indiana. ERR does business under a number of fictitious business names, including but not limited to Valley Services, Valley Recycling, Scrappers Racing and SR Team Motorsports (domiciled in Indiana).

Defendant MICHAEL G. SALINAS ("SALINAS") is an individual, and is the Chief Executive Officer of Defendant ERR. Plaintiff alleges that SALINAS is involved in ERR's day-to-day operations.

Defendant JEFF HERMLE ("HERMLE") is an individual, and it is alleged he is a member of management of Defendant ERR, with the purported title of Operations Manager. Plaintiff alleges that HERMLE is involved in ERR's day-to-day operations. In addition to the causes as delineated below, HERMLE is also sued in his individual/personal capacity under California Government Code §12940(j)(3).

Defendant ALFONSO VALENCIA ("VALENCIA") is an individual and is a member of management of Defendant ERR. Plaintiff alleges that VALENCIA is involved in ERR's day-to-day operations. In addition to the causes as delineated below, VALENCIA is also sued in his individual/personal capacity under California Government Code §12940(j)(3).

Defendant SALVADOR ORTEGA ("ORTEGA") is an individual and is a member of management of Defendant ERR. Plaintiff alleges that ORTEGA is involved in ERR's day-to-day operations. In addition to the causes as delineated below, ORTEGA is also sued in his individual/personal capacity under California Government Code §12940(j)(3).

Defendant DOUG SOLINSKY ("SOLINSKY") is an individual, and is a member of management of Defendant FAIRFIELD RESIDENTIAL. Plaintiff alleges that SOLINSKY in his capacity as a project

manager with Defendant FAIRFIELD RESIDENTIAL conspired with the ERR Defendants to terminate Plaintiff in violation of public policy, as plead in the Second Cause of Action.

Defendant FAIRFIELD RESIDENTIAL ("FAIRFIELD), is a business organization, form unknown, with a business address of 6601 Owens Drive, Suite 235, Pleasanton, CA 94588. According to the website linked to SOLINSKY's email, FAIRFIELD RESIDENTAL purportedly holds a "Corporate Office" in San Diego, California, and is affiliated with a number of alleged corporate entities, including the "parent" Defendant FRH Management, LLC.

Defendant FRH MANAGEMENT, LLC ("FRH"), is a business organization, doing business in the State of California that was purportedly registered May 9, 2019 with the California Secretary of State, as a Delaware Limited Liability Company and assigned California Secretary of State file number 201913510196. The current status and/or standing with either the States of California or Delaware Secretaries of State and/or Franchise Tax Board are unknown at this time. FRH purportedly has its principal California office located at 5355 Mira Sorrento Place, Suite 100, City and County of San Diego, California. Plaintiff alleges that FRH is the actual entity that SOLINSKY is a manager of. csc

Plaintiff hereby defines the reference of "FRH Defendants" as SOLINSKY, FAIRFIELD and FRH. Plaintiff's allegations against the FRH Defendants only extends to the first three causes of action.

Plaintiff hereby defines the reference of "ERR Defendants" as ERR, SALINAS, HERMLE, VALENCIA and ORTEGA, jointly and severally.

The individual Defendants, SALINAS, HERMLE, and VALENCIA are sued in their individual capacities as "aiders and abettors" [O'Neil v. Q.L.C.R.I., Inc., 750 F. Supp. 551, 32 Env't. Rep. Cas. (BNA) 1661, 21 Envtl. L. Rep. 20291 (D.R.I. 1990).] with regard to the Environmental claims herein.

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial pursuant to Federal Rules of Civil Procedure Rule 38(b), as to those issues so triable.

**INTRODUCTION**

Plaintiff was formerly employed by Defendant ERR. During Plaintiff's tenure he reported several Occupational Safety and Environmental violations to management. Plaintiff also reported several environmental violations to HERMLE and SALINAS. Plaintiff reported the hostile work environment to ERR's human resources department and to SALINAS, as well as later to HERMLE. Additionally, Plaintiff was personally subjected to hostile work conditions of a sexual nature by his supervisor VALENCIA in the presence of ORTEGA who failed to take action. As such, Plaintiff brings this action for the hostile work environment, retaliation and for the environmental causes for which Plaintiff has provided the required 60-day notices to Defendants for. A copy of the 60-day notices are appended hereto as "Attachment A"

Plaintiff also brings this complaint as a Citizen's Suit under Section 326 of the Emergency Planning and Community Right-to-Know Act ("EPCRA"), 42 U.S.C.A. §11046. Plaintiff alleges that defendants have violated EPCRA by failing to prepare chemical emergency response plans; failure to submit or release Safety Data Sheets as required under EPCRA; and, failure comply with Hazardous Chemical Inventory reporting requirements under EPCRA.

Plaintiff additionally brings this complaint pursuant to section 505 of the Federal Water Pollution Control Act (the "Clean Water Act"), 33 U.S.C.A. § 1365. Since at least March 1, 2020, Defendants have violated, and continue to violate, numerous requirements of National Pollutant Discharge Elimination System ("NPDES") and any General Permit ("General Industrial Permit" or "Permit") governing the discharge and abatement of stormwater/urban runoff ("stormwater" or "stormwater pollution") associated with industrial activity, including sheetflow. Stormwater pollution flows over impervious surfaces and through storm drains from Defendants' facilities, generally without treatment.

Furthermore, Plaintiff seeks Declaratory and Injunctive Relief and civil penalties under Section 7002 of the Resource Conservation and Recovery Act ("RCRA") as amended, 42 U.S.C.A. § 6972, for the Defendants' repeated and continuing violations of the requirements, standards, and conditions of RCRA and its implementing regulations as described below.

## JURISDICTION, VENUE *and* INTRA-DISTRICT ASSIGNMENT

The United States District Court for the Northern District of California, San Jose Division is the proper Court as the primary named business Defendant has its principal business operations located in the City of San Jose, County of Santa Clara; and, almost all other Defendants are/can be located within the Northern District of California and within 100 miles of the San Jose Division.

Federal statute provides that the Federal District Courts shall have original jurisdiction over the Federal environmental claims plead herein [28 USC §1331]. The District Court has jurisdiction over the additional employment related claims as at least provided in 28 USC §1367.

On or about April 28, 2021, Plaintiff gave notice of the Federal environmental violations by defendants and Plaintiff's intent to file suit to the Administrator of the EPA, the Regional Administrator of EPA Region 9, the California State Water Resources Control Board ("The Waterboard"), the State of California Attorney General, the Attorney General Of the United States, and the defendants, as required by Section 326(d) of EPCRA, 42 U.S.C.A. § 11046(d); Section 505(b) of the Clean Water Act; and, 42 USCA §6972(b) of RCRA. A copy of this notice is attached as "Attachment A."

More than sixty days have elapsed since notice was served. Neither the EPA, the US Attorney General nor the State of California have commenced and are not diligently prosecuting an administrative order or a civil action to redress the environmental violations.

Additionally, Plaintiff obtained a Right-to-Sue authorization (number 202104-13237514) on April 14, 2021, prior to his separation, against Defendant ERR for the sexual harassment/hostile work environment and retaliation claims. Due to the sensitivity of the claims and information contained in the Right-to-Sue documentation, Plaintiff will provide a copy to opposing parties during initial disclosures.

## FIRST CAUSE OF ACTION – SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT

1. In November 2020, Plaintiff applied for a position advertised by Defendant ERR of Safety Manager. While Plaintiff's application was pending, the advertised position was consolidated into the Operations Engineer's duties. As such, Plaintiff was offered a route driver position with the opportunity to assist the Operations Engineer (Angeles) with safety related issues. Until Plaintiff's

termination, Plaintiff performed his job in an exemplary manner as evidenced by performance reviews and raises.

2. During Plaintiff's employment, on or about January 12, 2021, Plaintiff was being trained as a router/dispatcher by VALENCIA. During this time, VALENCIA wanted to "play a joke" of a sexually harassing nature involving a hose adapter tool, upon a female employee. Plaintiff objected and refused. When the female employee arrived at the dispatch office, Plaintiff presented the tool directly to the female employee by placing it on a desktop near her, without any lewd commentary or action. After the female employee left, VALENCIA closed the office door and admonished Plaintiff saying "why'd you do that? You're supposed to have my back in here." Plaintiff stated that he opposed the proposed sexual in nature conduct and emphasized especially because there was a female involved.

3. On or about January 15, 2021, Plaintiff was in ERR's "old yard" parking lot outside of the dispatch and operations trailer when Plaintiff noticed VALENCIA and ORTEGA loading a portable toilet into the bed of a white pickup truck, for delivery later that afternoon. While in the process of using ratcheting straps to secure the portable toilet, VALENCIA extended his arm into the tight space between the cab of the truck and the portable toilet. VALENCIA exclaimed to the other supervisor ORTEGA "Sal, give me a reach-around!" Plaintiff only took notice of this comment when VALENCIA laughed and repeated his request "Come on, give me a reach around, Sal!" "Sal, give me a reach-around." During the time VALENCIA said these things, Plaintiff observed VALENCIA roll his eyes back, open his mouth and gesticulate as if he was the recipient of a sexual act. In common street/slang terms, a "reach around" is known as manual stimulation of a partner's genitalia by a partner who is behind the one being gratified. Plaintiff pointed out to VALENCIA that the office window next to him was open and that he should be careful about what he was saying because "you never know who might be near" including the females that frequent the office where the open window was located.  VALENCIA gave Plaintiff a look of disapproval, and then switched into Spanish to speak to ORTEGA, allegedly thinking that Plaintiff didn't understand. When VALENCIA continued the inappropriate commentary in Spanish, including making disparaging remarks about Plaintiff and

Plaintiff's comments about VALENCIA's inappropriate actions and remarks, Plaintiff said in Spanish that he understood what VALENCIA was saying. At this point, VALENCIA stopped talking.

4. Plaintiff reported these actions, both verbally (on 1/15/2021) and in writing (on 1/21/2021) to ERR's Human Resources Manager, Lisa Saenz ("SAENZ").

5. Immediately after the incidents with VALENCIA, Plaintiff's was removed from job duties within the dispatch/operations office and was relegated to solely field service duties or assisting the Operations Engineer with safety issues. VALENCIA continued with minor retaliatory actions for over a month, which Plaintiff documented and reported to SAENZ.

6. On or about February 19, 2021, when VALENCIA was speaking via telephone to Plaintiff in the field while Plaintiff was at a client site, VALENCIA made disparaging comments about Plaintiff. VALENCIA was on speakerphone and was overheard by the client's site manager. When the Client's site manager spoke up to remind VALENCIA that he was also present on the call, VALENCIA's tone changed to "unicorns and rainbows."

7. On or about February 22, 2021, Plaintiff had a conversation with SALINAS regarding the above January and February 19th incidents. SALINAS stated that it was that moment that he first heard of the incidents involving VALENCIA and ORTEGA. Plaintiff advised SALINAS that he had reported matters in writing to ERR's Human Resources Manager (SAENZ) more than a month prior. SALINAS advised he was "going to address this right now" wherein SALINAS drove off towards ERR's main offices.

8. Plaintiff was later advised by SAENZ that "the issues have been addressed including requiring training" for VALENCIA and ORTEGA. After this, SAENZ regularly maintained contact with Plaintiff to document and monitor Plaintiff's concerns that were ongoing with VALENCIA.

9. On March 24, 2021 Plaintiff received a performance review stating that he was an exemplary employee. Plaintiff also received recognition for "promoting a safety culture."

10. On April 3, 2021, Plaintiff received a performance increase of $1.50 per hour, with a statement of "keep up the good work."

11. On or about April 8, 2021, Plaintiff reached out to CAL/OSHA's (California State's Occupational Safety and Health Administration, a division of the State Department of Industrial Relations

www.dir.ca.gov/dosh) consulting unit on Clay Street in Oakland for guidance regarding several concerns for improvement at ERR. Plaintiff subsequently advised VALENCIA, HERMLE and the Operations Engineer regarding this contact with CAL/OSHA.

12. On April 13, 2021, at approximately 0735 am, Plaintiff reported to VALENCIA and later that morning to HERMLE, that Plaintiff had been assaulted at a client site (FAIRFIELD), by a client employee, shortly prior to Plaintiff's approximate 7:30am call to VALENCIA. Plaintiff also contacted the Operations Engineer(Angeles) to review the Lytx Dashcam footage from the vehicle Plaintiff was operating. Plaintiff was told that the assault had been recorded only partially as it was part out of frame, but that in the opinion of the Operations Engineer, Plaintiff handled the matter appropriately.

13. On the evening of April 13, 2021, Plaintiff received a call from an ERR coworker advising that VALENCIA had removed Plaintiff from his assigned route the next morning. Plaintiff then subsequently received a call from HERMLE advising the same information, that VALENCIA had removed Plaintiff from his assigned route, and that Plaintiff was on standby until called by VALENCIA or HERMLE. Plaintiff advised HERMLE that he felt that VALENCIA's actions were in retaliation for VALENCIA's conduct and for consulting CAL/OSHA regarding workplace safety and for Plaintiff's harassment complaint submitted to SAENZ (ERR's HR rep.) against VALENCIA. Plaintiff advised HERMLE that he would be filing a retaliation complaint with California's Department of Fair Employment and Housing("DFEH"). HERMLE said he would get back to Plaintiff.

14. On the morning of April 14, 2021, at approximately 7:30 a.m., Plaintiff filed with the DFEH a complaint charging the defendants with retaliation and harassment. After the filing of the complaint, DFEH issued Plaintiff a right-to-sue letter.

15. Mid-morning of April 14, 2021, HERMLE contacted Plaintiff to request Plaintiff to come into the office at approximately 1:30pm for a meeting. Plaintiff advised HERMLE at this time that earlier that morning, the retaliation complaint had been filed regarding VALENCIA's actions.  At 1:30pm, Plaintiff arrived and was met by SAENZ and the Operations Engineer. SAENZ stated that there were some documents that she wanted Plaintiff to review and sign. Plaintiff advised SAENZ the same as

Plaintiff had advised HERMLE; that Plaintiff had filed a retaliation complaint with the DFEH and received a right-to-sue letter. Plaintiff also stated to SAENZ that on advice of counsel, he was not signing anything unless his legal counsel reviewed it first. SAENZ then stated that on VALENCIA's recommendation, the company had decided earlier that morning to end Plaintiff's employment relationship.

16. Defendants terminated plaintiff's employment in retaliation for his rejection of inappropriate and unwanted sexual behavior and his complaints regarding such behavior as well as Plaintiff's communication with CAL/OSHA regarding safety issues.

17. As a result of defendants' retaliation and harassment actions against him, Plaintiff has suffered and continues to suffer damages, including but not limited to, emotional and physical distress, the exact amount of which will be proven at trial.

18. Defendants and each of them acted for the purpose of causing plaintiff to suffer financial loss and severe emotional distress and physical distress and are guilty of oppression and malice, justifying an award of exemplary and punitive damages.

## SECOND CAUSE OF ACTION –
## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

19. Plaintiff incorporates each allegation set forth in paragraphs 1 through 18.

20. The above-described conduct of defendants constitutes sexual harassment and retaliation, and wrongful termination of plaintiff in violation of public policy embodied in the California Fair Employment and Housing Act ("FEHA").

21. As a result of defendants' wrongful termination of him, plaintiff has suffered and continues to suffer damages, including but not limited to severe emotional and physical distress, the exact amount of which will be proven at trial.

22. Defendants and each of them acted for the purpose of causing plaintiff to suffer financial loss and severe emotional distress and physical distress and are guilty of oppression and malice, justifying an award of exemplary and punitive damages.

**THIRD CAUSE OF ACTION - CONSPIRACY**

23. Plaintiff hereby incorporates by reference paragraphs 1-22, as if fully set forth and plead in full here.

24. Plaintiff hereby alleges that VALENCIA as an agent of ERR decided to take advantage of an assault incident upon Plaintiff on April 13, 2021 to terminate him in retaliation for Plaintiff's reporting of VALENCIA and ORTEGA's misconduct of a sexual nature and failure to act.

25. Plaintiff hereby alleges, upon information and belief, that when VALENCIA heard of the assault upon Plaintiff, VALENCIA manipulated the facts and made patent misrepresentations to ORTEGA and HERMLE.

26. Plaintiff hereby alleges, upon information and belief, that VALENCIA having made the patent misrepresentations, garnered the support of ORTEGA and HERMLE to facilitate the termination of Plaintiff in retaliation for Plaintiff's reporting of VALENCIA and ORTEGA's misconduct of a sexual nature and failure to act in response to that reporting.

27. Plaintiff hereby alleges that at least beginning on April 13, 2021, VALENCIA, ORTEGA and HERMLE had multiple exchanges with FRH defendants, their employees and/or agents.

28. Plaintiff hereby alleges that on April 13, 2021, VALENCIA and HERMLE communicated to the FRH Defendants of the assault upon Plaintiff while employed by ERR. That SOLINSKY, as a manager for the FRH Defendants, and acting in concert with VALENCIA, ORTEGA and/or HERMLE, drafted and sent an electronic mail message containing false statements and patent misrepresentations, in order to facilitate the termination of Plaintiff in violation of Public Policy.

29. Plaintiff alleges the following elements of conspiracy have been meet [Beck - 529 US 494 (2000)]:

    a. An illegal agreement between Defendants VALENCIA, ORTEGA, HERMLE, ERR and the FRH Defendants to terminate or facilitate/promote the termination of Plaintiff in violation of public policy.

    b. Injury proximately caused to the Plaintiff by Defendants VALENCIA, ORTEGA, HERMLE, ERR and the FRH Defendants, by the tortious act(s) plead herein including, termination of Plaintiff in violation of Public Policy and Wire Fraud.

**FOURTH CAUSE OF ACTION –**

**FEDERAL EMERGENCY PLANNING AND COMMUNITY RIGHT-TO-KNOW ACT**

30. Plaintiff hereby incorporates by reference paragraphs 1-29, as if fully set forth and plead in full here.

31. This action is a citizen suit, brought under Section 326, 42 U.S.C.A. § 11046, of the Emergency Planning and Community Right-to-Know Act ("EPCRA") of 1986, also commonly known as SARA Title III, 42 U.S.C.A. §§ 11001 et seq. and the Pollution Prevention Act of 1990, 42 U.S.C.A. § 13106(a) (hereinafter incorporated into Section 313 of EPCRA, 42 U.S.C.A. § 11023). Plaintiff seeks a declaratory judgment, injunctive relief, the imposition of civil penalties and the award of costs, including attorneys and expert witness fees, for Defendants' repeated violations of the terms and requirements of Section 313 of EPCRA, 42 U.S.C.A. § 11023.

32. Defendants violations of EPCRA have been numerous and repeated. Defendants have been in violation of Section 313 of EPCRA since at least March, 2020 at its facilities. During that time, Defendants failed to submit Toxic Chemical Release Inventory Forms (EPA Form Rs) to either the EPA or the State DEC for urea, hydrochloric acid, 2-bromo 2 nitropropane-1, 3-diol (Bronopol), acetone, ethylbenzene, toluene, xylene, ethoxylated alcohol, sodium citrate, sodium carbonate, sodium hypochlorite, methane, chlorine and other chemicals subject to Section 313 of EPCRA as well, for the years 2020 and 2021. Upon information and belief, Defendants have thereby violated Section 313 of EPCRA on a number of separate occasions. Each day consists of a separate violation subject to penalties of up to $25,000 per day for each violation, pursuant to Sections 325(c)(1) and (c)(3), 42 U.S.C.A. § 11025(c)(1) and (c)(3).

33. Defendants' failure to complete and submit EPA Form Rs for its facility as required has deprived and prevented the Federal, State and local governments, as well as the people of communities surrounding the Defendant's facility, from knowing of the toxic chemicals used at and released from Defendant's facility. Such failure by Defendant subverts the purposes of EPCRA, specifically Sections 313(h) and 324, 42 U.S.C.A. §§ 11023(h) and 11044, thereby causing injury to individuals' environmental, aesthetic, economic, safety and recreational interests.

34. Defendants' failure to submit Material Safety Data Sheets or SDSs of chemicals present on-site to the State Emergency Planning Commission, the local Unified Program Agency, local Emergency

Planning Commission, local Fire Department or upon request, violates sections 311 and 312 of EPCRA.

## FOURTH CAUSE OF ACTION – FEDERAL CLEAN WATER ACT

35. Plaintiff hereby incorporates by reference paragraphs 1-34, as if fully set forth in full here.

36. Section 301(a) of the Clean Water Act("CWA"), 33 U.S.C.A. § 1311(a), prohibits the discharge of pollutants from a point source into navigable waters of the United States, unless in compliance with various enumerated sections of the CWA. Section 301(a) prohibits such discharges not authorized by, or in violation of the terms of, an NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C.A. § 1342.

37. Section 402(p)(3)(A) of the CWA, 33 U.S.C.A. § 1342(p)(3)(A), requires a permit to discharge stormwater associated with industrial activity.

38. Pursuant to section 402 of the CWA, 33 U.S.C.A. § 1342, the Administrator of EPA has authorized the State Board to issue NPDES permits and general permits in California.

39. Defendant ERR's properties are commercial/industrial in nature spanning over 2 acres. Approximately 70% is impervious surface. The Defendants operations and activities contribute pollutants to stormwater discharge to stormwater outfalls, including material storage, vehicle maintenance, vehicle storage, recycling, material handling and sewage transfer. Materials handled include those stated herein which include sewage and corrosives.

40. Stormwater pollution flows from facilities and processes within the Defendants' facilities, generally without treatment, into storm drains and the receiving waters.

41. On information and belief, Defendants' unlawful and excessive discharges of stormwater pollution contain numerous harmful pollutants, including, but not limited to, turbidity, sediments, and toxic chemicals such as Bronopol, Mangnesium Sulfate, and Sodium Hypochloride. These discharges, including those made in violation of the Permit, deleteriously affect the receiving waters. The State Board issued the General Industrial Permit (WQ Order No. 2014-0057-DWQ) on or around April 20, 2014 and modified the Permit on or around August 4, 2015 , pursuant to Section 402(p) of the Act, 33 U.S.C.A. § 1342(p). By its terms, the Permit regulates the discharge of stormwater associated with

industrial activity from 2014 to present. The Permit is a general permit applying to dischargers of stormwater associated with industrial activity throughout most of the State of California, including the area within which Defendants operate and discharge stormwater. Defendants discharge stormwater associated with industrial activity into storm drains and the receiving waters.

42. Each discharge associated with industrial activity directly affects the receiving waters. On information and belief, Defendants' stormwater discharges include noxious pollutants. Non-complying discharges of such pollutants into storm drains and the receiving waters adversely affect not only water quality but adjacent coastal and riparian zones that are recreational centers for millions of people annually and important habitats for several species.

43. The receiving waters are navigable waters of the United States.

44. To discharge stormwater lawfully, Defendants must either comply with the terms of the General Industrial Permit, or obtain coverage and comply with an individual NPDES permit. On information and belief, Defendants have not obtained an individual NPDES permit regulating their stormwater discharges.

45. Defendants' discharges of stormwater pollution are discharges from a point source or sources into navigable waters of the United States within the meaning of Section 301 of the CWA, 33 U.S.C.A. § 1311.

46. Defendants are prohibited from discharging stormwater pollution except in full compliance with the specific terms set forth in an issued permit.

47. On information and belief, the Permit governs and regulates Defendants' stormwater discharges into storm drains and the receiving waters from at least the facilities delineated above under control of the Defendants. Defendants are responsible for Permit compliance for all of these facilities.

48. The Act and the Permit require Defendants to implement Best Available Technology Economically Achievable and Best Conventional Pollutant Control Technology to reduce and eliminate industrial stormwater pollution within the Port's boundaries. Specifically, the Permit requires, inter alia, that Defendants:

   a. Eliminate most non-stormwater discharges, including illicit connections, to the stormwater system;

b.   Develop and implement a Storm Water Pollution Prevention Plan ("SWPPP") for each regulated facility; and

c.   Develop and implement a Monitoring and Reporting Program for stormwater discharges.

49. Defendants have failed and continue to fail to comply with the requirements of the Permit in that, without limitation, Defendants have failed to:

a.   Ensure that SWPPPs prepared and implemented for all facilities under the defendants control, provide a description of potential sources which may be expected to add significant quantities of pollutants to stormwater discharges, or which may result in non-stormwater discharges, as required by Section X of the Permit (pp. 28, et seq.);

b.   Ensure that SWPPPs prepared and implemented for facilities under the defendants control, describe the stormwater management controls appropriate for such facilities, as required by Section X of the Permit;

c.   Ensure that non-stormwater discharges were eliminated prior to the implementation of each facility's SWPPP, as required by the Permit;

d.   Prepare and implement a Monitoring and Reporting Program which contains all of the elements required by the Permit, including: (1) a rationale for selection of monitoring methods, (2) an adequate quality assurance/quality control program, and (3) procedures and schedules to evaluate the effectiveness of the monitoring program;

e.   Document the elimination or reduction of specific pollutants resulting from the implementation of the SWPPP for each facility under the defendants' control, as required by the Permit;

f.   Conduct wet season visual observations of all stormwater discharge locations during the first hour of one storm event per month that produces significant stormwater discharge, as required by the Permit;

g.   Sample all pollutants that are likely to be present in stormwater discharge in significant quantities, as required by the Permit;

h.   Collect samples from all locations where stormwater is discharged, as required by the Permit;

i.  Properly operate and maintain facilities and systems of treatment and control which are installed or used by the discharger to achieve compliance with the Permit, as required by the Permit;

j.  On information and belief, comply with the requirements of the Permit concerning stormwater effluent limitations for facilities with storage of materials which are used in or derived from the storage and treatment of sewage waste, as delineated within 40 C.F.R. Part 403, including: analyzing for any regulated pollutant, estimating or calculating the volume of effluent discharged from each outfall, estimating or calculating the mass of each regulated pollutant, and identifying the individual(s) performing the estimates or calculations described above; and

k.  On information and belief, comply with the Permit concerning numeric effluent limitations for Total Suspended Solids ("TSS"), established in 40 C.F.R., in at least 60 different sampling events.

50. Defendants' discharges of stormwater pollution are violations of Section 301(a) of the CWA, 33 U.S.C.A. § 1311(a).

51. On or about August 27, 2019 the WATERBOARDS mailed to ERR (dba Valley Services) a notice regarding information needed to comply with permit requirements relating to stormwater discharges. This notice is identified as number 2506171 in the WATERBOARDS stormwater database.

52. On or about November 21, 2019, the WATERBOARDS sent via certified mail to ERR (dba Valley Services) a notice of non-compliance for operating an industrial facility without a Stormwater Permit. This notice is identified as number 2549061 in the WATERBOARDS stormwater database.

53. On information and belief, Plaintiff alleges that Defendants have yet to fully comply with either notice alleged in lines 51 and 52 above.

54. Defendants are subject to an injunction ordering them to cease violating the Clean Water Act.

55. Defendants are subject to an assessment of civil penalties for violations of Sections 309(d) and 505 of the CWA, 33 U.S.C.A. §§ 1319(d) and 1365.

56. For the purpose of assessing the maximum penalty for which Defendants may be liable, each instance of Defendants' violation of each of the specific provisions of the Permit constitutes a separate

violation of Section 301(a) of the CWA, 33 U.S.C.A. § 1311(a). Defendants may be assessed a civil penalty, pursuant to Section 309(d) of the CWA, 33 U.S.C.A. § 1319(d), for each day on which each violation has occurred and for each day on which a violation will occur after the filing of this Complaint.

### FIFTH CAUSE OF ACTION –
### FEDERAL RESOURCE CONSERVATION AND RECOVERY ACT ("RCRA")

57. Plaintiff incorporates by reference paragraphs 1-56 hereof as though set forth in full here.

58. Federal regulations codified at 40 C.F.R. 262.12 and State Regulations codified at Calif. Code Reg. Title 22, provide that a generator must not offer its hazardous waste to transporters that have not received an EPA identification number and must not offer its waste to treatment, storage, or disposal facilities that have not received an EPA identification number.

59. The federal and state regulations described herein have become effective pursuant to RCRA.

60. On numerous occasions subsequent to the effective dates of the regulations described in Paragraph 58, Defendants have offered and continue to transport hazardous wastes without an EPA identification number, for subsequent transport to a disposal facility.

61. The occurrences related in the preceding paragraph constitute violations of the regulations that have become effective pursuant to RCRA. Defendants thus have been in violation, are in violation, and will continue to be in violation of regulations that have become effective pursuant to RCRA. These violations are continuing and will continue in the future unless restrained and enjoined by this Court.

62. Federal regulations codified at 40 C.F.R. §§ 262.20 to 262.23 and State Regulations codified at Title 22, California Code of Regulations provide that each generator of hazardous wastes who transports, or offers for transportation, hazardous waste for offsite treatment or disposal must prepare a waste manifest for each shipment. The hazardous waste manifest must specify a facility that is permitted to handle the waste described on the manifest, and may designate an alternate facility. The generator must retain a copy and provide additional copies to the transporter. The State Regulations further specifically forbid a generator to offer for shipment or to ship a hazardous waste to other than an authorized facility.

63. On numerous occasions subsequent to the effective dates of the regulations described in Paragraph 55 that required preparation and retention of manifests, Defendants have offered, and continue to offer, shipments of hazardous wastes for transport without preparing or retaining hazardous waste manifests. Defendants have also shipped or offered for shipment hazardous waste.

64. The occurrences related in the preceding paragraph constitute violations of regulations that have become effective pursuant to RCRA. Defendants thus have been in violation, are in violation, and will continue to be in violation of regulations that have become effective pursuant to the Act. These violations are continuing and will continue in the future unless restrained and enjoined by this Court.

65. Federal regulations codified at 40 C.F.R. § 262.34 and State Regulations codified at Title 22, California Code of Regulations, provide that generators must comply with requirements pertaining to short-term accumulations (for up to ninety days) of wastes awaiting transport. Those regulations require, *inter alia,* that during short-term accumulation such wastes must be placed in approved, labeled containers. Further, those regulations provide that wastes may not be accumulated for longer than ninety days unless the generator obtains a permit to operate a storage facility and complies with regulations pertaining to storage facilities.

66. The federal and state regulations described above have become effective pursuant to RCRA.

67. On numerous occasions subsequent to the effective dates of the regulations described in Paragraph 58 that pertain to short-term accumulation, Defendants have accumulated hazardous materials in a manner that fails to comply with those regulations, and they continue to do so.

68. The occurrences related in Paragraph 60 and following, constitute violations of regulations that have become effective pursuant to the Act. Defendants thus have been in violation, are in violation, and will continue to be in violation unless restrained and enjoined by this Court. These violations are continuing and will continue in the future unless restrained and enjoined by this Court.

69. Federal regulations codified at 40 C.F.R. §§ 262.40 to 262.43 and State Regulations codified at Title 22 California Code of Regulations provide that each generator of hazardous wastes that ships its wastes offsite must meet certain recordkeeping and reporting requirements, including submission of a biennial report that identifies all facilities to which waste was shipped and the transporters used; the amount and type of wastes shipped; a description of efforts undertaken during the year to reduce the

volume and toxicity of wastes generated; and a description of the changes in volume and toxicity of wastes actually achieved. (The State of required an annual rather than a biennial report.) Those regulations further require that a generator must keep copies of materials required by other provisions of the regulations, including manifests, manifest exception reports, and test results or waste analyses, for three years.

70. The federal and state regulations described in the preceding paragraph have become effective pursuant to RCRA.

71. Since at least March 2020 to the present, after the effective dates of the regulations described in Paragraph 62 that pertain to recordkeeping and reporting, Defendants have never maintained the required records nor submitted the required reports.

72. The occurrences related in Paragraph 64 constitute violations of regulations that have become effective pursuant to the Act. Defendants thus have been in violation, are in violation, and will continue to be in violation of regulations that have become effective pursuant to the Act. These violations are continuing and will continue in the future unless restrained and enjoined by this Court.

## SIXTH CAUSE OF ACTION – VIOLATION OF THE
## PRE-TREATMENT STANDARDS OF THE CLEAN WATER ACT

73. Plaintiff incorporates by reference paragraphs 1-72 hereof as though set forth in full here.

74. The Clean Water Act promulgates regulations relating to discharges into Publically Owned treatment Works (POTW) of sewage and other materials from other than residential domestic sewage customers. 40 CFR 403.8 delineates that any industrial user of the POTW must comply with the standards set out by the EPA for pre-treatment programs, based on use of the POTW.

75. Plaintiff alleges that Defendants are neither participating in the POTW pre-treatment program, they do not have a permit from the local POTW pre-treatment program, nor do they have a waiver of participation from the POTW.

76. Plaintiff further alleges that Defendants have failed to make notifications, including any "slug-loading" notifications, to the local POTW as required pursuant to 40 CFR 403.12.

77. Additionally, Plaintiff alleges that Defendants have failed keep and maintain records required by 40 CFR 403.12.

78. The occurrences related above constitute violations of regulations that have become effective pursuant to the Clean Water Act. Defendants thus have been in violation, are in violation, and will continue to be in violation of regulations that have become effective pursuant to the Act. These violations are continuing and will continue in the future unless restrained and enjoined by this Court.

## **RELIEF DEMANDED**

1. As to the First Cause of Action, against Defendants jointly and severally, for damages in an amount to be proven.

2. As to the Second Cause of Action, joint and severally against all Defendants for exemplary and punitive damages according to proof;

3. As to the Third Cause of Action, jointly and severally against all Defendants, compensatory and punitive exemplary damages according to proof;

4. As to the Fourth through Sixth Causes of Action, against ALL ERR DEFENDANTS:

   a. Pursuant to Section 7002(a) of the Resource Conservation and Recovery Act ("RCRA"), Title 42 U.S.C.A. §6972(a), grant the following relief:

      i. Declare that Defendants have been and continue to be in violation of regulations that have become effective pursuant to RCRA;

      ii. Permanently restrain and enjoin Defendants from violation of standards, prohibitions, condition, permits, regulations, and requirements that have become effective pursuant to RCRA.

   b. Award Plaintiff its costs of litigation, including but not limited to attorneys' fees and expert witness fees, pursuant to Section 7002(e) of the Resource Conservation and Recovery Act, 42 U.S.C.A. § 6972(e).

   c. Enter judgment declaring that Defendants have violated the Clean Water Act by failing to comply with the General Industrial Permit and/or National Pollution Discharge Elimination System (NPDES) Permitting requirements;

d. Order Defendants to pay civil penalties of $25,000 per day for each violation pursuant to Sections 309(d) and 505(a) of the Clean Water Act, 33 U.S.C.A. §§ 1319(d) and 1365(a);

e. Award Plaintiffs their costs of suit, including reasonable attorney and expert witness fees, pursuant to Section 505(d) of the Clean Water Act, 33 U.S.C.A. § 1365(d);

f. Issue a declaratory judgment that Defendant, ERI, violated Sections 311, 312 and 313 of the Emergency Planning and Community Right-to-Know Act, 42 U.S.C.A. § 11021, et seq., as well as the Pollution Prevention Act, 42 U.S.C.A. § 13106, et seq.;

g. Enjoin Defendants from operating its facility in such a manner as will result in further violations of the Acts;

h. Authorize Plaintiff, for the period beginning on the date of the Court's Order and running for a minimum period of 60(sixty) months, to inspect Defendant's facilities for compliance with all of the provisions of the Acts, with the cost of inspection borne by Defendants;

i. Order Defendant to provide Plaintiff, for a period beginning on the date of the Court's Order and running for a minimum period of 60(sixty) months, with a copy of all reports and other documents which defendant submits to the U.S. EPA, the California Environmental Protection Agency, or any California political subdivision's authority regarding Defendants' compliance with the provisions of the Acts at the time they are submitted to those authorities;

j. Award Plaintiff its costs, including reasonable attorneys and expert witness fees, as authorized by Section 326(f) of the Emergency Planning and Community Right-to-Know Act, 42 U.S.C.A. § 11046(f); and,

5. For Court fees and Costs according to proof; and,

6. For such other further relief as the Court may order.

Dated: December 29, 2021                    LIBERTY & ASSOCIATES, PC


_____
Louis Liberty
Attorney for Plaintiff

## VERIFICATION

I, Steven Nemec, declare that I am the Plaintiff in the above-entitled matter. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except to those matters stated on information and belief, and as to those matters, I believe them to be true.

Executed this 28th day of December, 2021 at County of Santa Clara, California

I declare under penalty of perjury that the foregoing is true and correct.

Steven Nemec